IN THE UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF LOUISIANA

SHREVEPORT DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA | DOCKET NO. 5:23-cr-174 |
| VERSUS | JUDGE HICKS |
| JOHN WAYNE MORGAN | MAGISTRATE JUDGE HORNSBY |

---

**DEFENDANT'S REPLY TO THE GOVERNMENT'S OPPOSITION
TO DISMISS THE INDICTMENT**

---

**MAY IT PLEASE THE COURT:**

**I.      The decision in *New York State Rifle & Pistol Association, Inc.* v. *Bruen*, 142 S.Ct. 2111, (2022) calls into question the constitutionality of 18 U.S.C. § 922(g)(1)  & 26 U.S.C. § 5861(d).**

The Government erroneously asserts that *Bruen* did not call into question statutes like § 922(g)(1) and 28 U.S.C. §5681(d). In support of its argument, it points to dicta in *District of Columbia v. Heller*, 554 U.S. 570 (2008) and in *Bruen* which suggests that *Bruen's* holding did not affect the prohibitions against felons possessing firearms or the prohibition against short-barreled rifles and other dangerous guns.  The parts of an opinion which constitute dicta are not binding on future courts.  See, *United States v. Vargas-Soto*, 35 F.4th 979, 997 (5th Cir. 2022), citing Bryan A. Garner, et al., The Law of Judicial Precedent 44 (2016) (explaining that dictum does not "bind future courts" and is "not law per se").

Not only does dicta concerning § 922(g)(1) and § 5861(d) lack authoritativeness, but it has also been undermined by *Bruen's* new test for assessing the constitutionality of any law which attempts to regulate the possession of firearms.  This test is known as the "historical

1

analogy test." Section 922(g)(1) and § 5861(d) may very well have survived *Heller's* former means-end scrutiny, but these prohibitions are now subject to a different level of scrutiny, i.e., the historical analogy test.

The importance of the analytical shift from *Heller* to *Bruen* can hardly be overstated. Applying the new test announced in *Bruen*, the U.S. District Court for the Southern District of Mississippi recently held in an "as applied" challenge that 18 U.S.C. § 922(g)(1) violated the Second Amendment. *United States v. Bullock*, --- F.Supp.3d --, 2023 WL 4232309 (June 28, 2023)(Reeves, J..) Citing *Bruen,* the district court found that the Government had failed to establish an historical tradition supporting § 922(g)(1)'s lifetime criminalization of Mr. Bullock's possession of a firearm. *Id*. at 31.

## II. Section 922(g)(1) & § 5826 do not pass *Bruen's* "Historical Analogy" Test.

The Government argues that even if *Bruen* was applicable to § 922(g)(1), the prohibition against felons possessing firearms would satisfy the historical analogy test announced in the decision. In support of its argument regarding § 922(g), the Government erroneously relies on its claim that felons do not fall within "the people" protected by the Second Amendment.

The text of the Second Amendment belies the Government's argument. The Second Amendment's use of the term "the people" is a term of art. The term is consistent with its use in the First and Fourth Amendments. None of the rights guaranteed in those amendments are permanently lost because a member of "the people" is convicted of a felony. Felons who have completed their sentences are protected from unreasonable searches and seizures under the Fourth Amendment. Convicted felons who have completed their sentences do not suffer a lifetime ban on any their First Amendment freedoms. Although they may be curtailed by

reasonable regulations while incarcerated, even inmates retain their First Amendment right to practice their religious beliefs, to exercise free speech with the outside world and to petition their representatives to redress grievances.

Although the Fifth Amendment and Sixth Amendments do not invoke the term "the people," their protections extend to all persons prosecuted in the United States. Felons do not lose their right to grand jury indictment, the privilege against self-incrimination or their right to be free from double jeopardy. The Sixth Amendment's right to a jury trial, effective assistance of counsel and the right to be free from double jeopardy are likewise guaranteed regardless of a defendant's criminal history.

Notwithstanding the applicability of the rights guaranteed by the First, Fourth, Fifth and Sixth amendments to convicted felons, the Government nevertheless insists that the Second Amendment is somehow different. In support of this position, it makes two principal arguments. First, it cites a D.C. Circuit case which found that "it is difficult to conclude that the public, in 1791, would have understood someone facing death and estate forfeiture to be within the scope of those entitled to possess arms." *United States v. Medina*, 913 F.3d 152, 158 (D.C. Cir. 2019).

This argument is nothing more than a straw man. The death penalty inarguably deprives a person of everything, including the right to bear arms. This is still as true today as it was in 1791. But, it has no relevance to the issue at hand. Mr. Morgan is not charged with, nor has he been convicted of a capital offense. Whatever the public might have thought about condemned inmates in 1791 has no bearing on Mr. Morgan's right under the Second Amendment to bear arms.

The Government argues that a second set of historical laws also provides an analogy to felon disarmament—colonial era laws that "categorically disqualified people from possessing firearms based on a judgment that certain individuals were untrustworthy parties to the nation's social compact." Remarkably, the Government cited three groups of "untrustworthy parties to the nation's social compact: (1) enslaved black Americans; (2) Catholics who refused to renounce their faith; and (3) Native Americans. These three categorical exclusions do not serve to advance the Government's argument that § 922(g)(1)'s prohibition against felons is constitutional. Rather, they serve to show that Colonial era legislatures knew exactly how to prohibit categories of people from possessing firearms. Convicted felons, however, were not among the groups of people they chose to prohibit.

Finally, the Government suggests that Mr. Morgan is not a trustworthy party to the nation's social compact because of his prior convictions. Prior to his arrest in the instant case, Morgan had prior felony convictions for illegal carrying of weapons (2022) and illegal use of a weapon (2016). As a legal matter, neither of these convictions are considered violent crimes under any current definition of federal law.

With regard to 26 U.S.C. § 5861d)'s prohibition against short-barreled rifles and other dangerous weapons, the Government's argument also fails the historical analogy test. The Government does not point to any colonial or state law in eighteenth-century America which formally restricted the type of weapons a citizen could possess. The Government goes so far as to cite a case[1] which characterizes short-barreled rifles as "weapons of war." This assertion begs the question of what the purpose of a "well-regulated militia" is if it's members cannot bring

---

[11] *United States v. Gonzales*, No. 10CR967-CW, 2011 WL 5288727 (D. Utah. Nov. 2, 2011) (unpublished).

weapons of war to the battlefield. Finally, it is significant to take note of the fact that the National Firearms Registration and Transfer Record, the criminal prohibition specified in 26 U.S.C. § 5861(d) did not become law until 1968.

Based on the prohibitions' twentieth century genesis, the prosecution cannot meet its burden of establishing that § 922(g)(1) and § 5861(d) are "consistent with the Nation's historical tradition of firearm regulation." *Bruen*, 142 S. Ct. at 2129–30. Because the prosecution cannot establish the requisite historical tradition, § 922(g)(1) and § 5861(d) are unconstitutional as applied to the defendant.

**WHEREFORE**, Mr. Morgan respectfully asks this Court to grant his motion to dismiss the indictment.

**Rebecca L. Hudsmith**
Federal Public Defender, Western &
Middle Districts of Louisiana

*s/ Betty L. Marak*

Betty L. Marak, La. Bar Roll No. 18640
Assistant Federal Public Defender
300 Fannin Street, Ste. 2199
Shreveport, Louisiana 71101
Tel: (318) 676-3310   Fax (318) 676-3313
Email: betty_marak@fd.org